IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2025

## STATE OF TENNESSEE v. JARROD DEWAYNE MOORE

**Appeal from the Circuit Court for Henderson County**
No. 23-246-2 Donald H. Allen, Judge

_____

### No. W2024-01173-CCA-R3-CD

_____

The Defendant, Jarrod Dewayne Moore, appeals the Henderson County Circuit Court's imposition of an effective ten-year sentence in confinement for his drug and firearm-related convictions, arguing that the trial court erred in denying his request for probation. Based on our review, we affirm the sentencing determinations of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and MATTHEW J. WILSON, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Jarrod Dewayne Moore.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Jody Pickens, District Attorney General; and Eric Woods, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On March 30, 2023, a Tennessee Highway Patrol trooper pulled the Defendant over for driving 95 miles per hour in a 70 mile per hour zone on Interstate 40 in Henderson County. The trooper found a loaded 9mm handgun in the Defendant's pocket and five THC vapes, four packages of THC, seven clear packages of marijuana, and one hand-rolled

marijuana cigarette in the Defendant's vehicle. The Henderson County Grand Jury subsequently returned a ten-count indictment that charged the Defendant in counts one and two with possession of marijuana with the intent to sell/deliver, in counts three and four with possession of a firearm during the commission of a dangerous felony, in count five with speeding, in counts six through nine with possession of a firearm having been convicted of a felony drug offense, and in count ten with convicted felon in possession of a handgun. On April 16, 2024, the Defendant pled guilty to counts one, two, and five through ten of the indictment in exchange for a total effective sentence as a Range II offender of ten years at 85%, with the manner of service left to the trial court's later determination. Pursuant to the terms of his negotiated plea, counts three and four of the indictment were dismissed.

At the June 27, 2024 sentencing hearing, the State introduced the Defendant's presentence report, which reflected that the fifty-two-year-old Defendant had a lengthy criminal history that included eight prior felony convictions, with his most recent being federal convictions for two counts of possession of cocaine with the intent to sell or distribute, possession of a weapon as a convicted felon, possession of marijuana with the intent to sell or distribute, and possession of hydrocodone pills with the intent to sell or distribute. The offense date was listed as January 12, 2007, and the disposition date as July 18, 2008. For those convictions, the Defendant received an effective term of 174 months in prison followed by three years of supervised probation.

The Defendant reported that he was unmarried, lived with his mother and stepfather in Memphis, had two grown daughters, and had been steadily employed for three years as a supervisor at "Chaparral Motor Parts" in Memphis, where he earned $22.70 per hour and worked a forty-five-hour work week. The Defendant reported no mental or physical health issues other than high blood pressure and high cholesterol, reported occasional use of alcohol but never having had a problem with it, and reported occasional use of marijuana beginning at the age of twenty-one, with his last use twenty years prior to the date of the presentence report. The Defendant reported that he had never used any other illegal drugs but had sold cocaine in the past. The Defendant received an overall risk of "low" on his Strong-R assessment. The Defendant's handwritten "Personal Statement of the Offense" reads as follows:

> I was stopped for speeding. I was passing a few trucks and the trooper turned to pull me over. I was going to visit my daughter who just finished college. I made a grave choice in deciding to indulge in thinking that it was OK to take her anything of illegal substance.

The Defendant testified at the sentencing hearing that the last time he had been in trouble was "almost 20 years" ago, on January 7, 2007. He said he was a completely

different person from the one he had been. At that earlier time, he was unemployed, lacked a close relationship with his family, was using marijuana, and was selling drugs. The Defendant stated that the death of his son during his previous incarceration caused him to reevaluate his life and to reconnect with his family. He said he worked hard in prison to learn and refurbish life skills and upon his release to a half-way house was able to get the job that he still had. He testified that the company for which he worked had changed owners since he first began his job. The new owners had promoted him to a supervisory position that they were holding open for him pending the outcome of the sentencing hearing.

The Defendant testified that he was not trying to excuse his behavior, but the reason he had a gun in the instant case was because he lived in Memphis, where "everywhere is rough[,]" and had recently been carjacked as he left his place of employment. He said the marijuana was intended as a gift for his daughter in Nashville, who had just graduated from college and started her own business. He had no intention of using the marijuana himself or of selling the marijuana or using the gun. He stated that when he saw the trooper, he immediately pulled over without any thought of trying to rid himself of the gun or the drugs.

The Defendant testified that he had done "[e]xcellent" on probation in the past. His probation officers, in fact, had asked him "to counsel because of how good [he] was doing." However, his current charges and incarceration had "put a hindrance" on his ability to do that. The Defendant stated that he was currently taking "Inside & Out Dad" and "MRT" classes. He said that if the trial court granted him probation, he would maintain employment, pass all drug and alcohol screens, and comply with all the conditions of intensive probation.

Upon questioning by the trial court, the Defendant testified that the marijuana had been packaged in separate bags because "a couple of them were vape pins and a couple of them were pre-rolled cigarettes." He said he exercised "poor judgment" in his decision to take the marijuana to his daughter. When asked why he would possess a firearm having been previously convicted of eight felonies, he repeated that he felt the need to have the gun due to the dangerous conditions in which he lived and worked in Memphis. When asked why he took the gun with him on a trip to Nashville, he responded that he left the house with the gun without thinking. The Defendant acknowledged that he had received an effective total sentence of 174 months, or approximately fourteen and one-half years, for his most recent prior convictions. He stated that he was released from federal custody on March 30, 2019, after serving approximately twelve years in prison. He denied that he was still on supervised release at the time of the instant offenses, testifying that he had completed his supervised release program. When asked again why he would possess a gun and marijuana after having just served such a lengthy prison term for the same offenses, he

repeated that he was not thinking and promised the trial court that, if given another chance, he would not even possess "a sharp knife[.]"

Stanley Jones, who said he had been the Defendant's stepfather since the Defendant was twelve or fourteen, testified that the Defendant was a good stepson, a good father, and a hard worker. He said he had talked to the Defendant's employers, and that they were holding open the Defendant's supervisory position pending the outcome of the sentencing hearing. He stated that he lived with the Defendant's mother and the Defendant's aunt and agreed that all three of them would help the Defendant be successful on probation. He said that the Defendant additionally had a supportive girlfriend who was present at earlier court settings but unable to attend the current hearing due to her daughter's having been in an accident.

Mr. Jones testified that the Defendant had not been close to his family during the earlier period in which he had been addicted to drugs and was committing crimes. He had no concerns about the Defendant "returning . . . to that old life" except that he worried about the impact of being carjacked had had on the Defendant. However, if the trial court granted the Defendant probation, he would ensure that the Defendant never possessed another weapon.

At the conclusion of the sentencing hearing, the trial court noted that the Defendant's plea agreement allowed him to plead as a Range II, multiple offender despite having a criminal history that qualified him as a Range III, persistent offender. The trial court also noted that the Defendant benefitted by the dismissal of the possession of a firearm during the commission of a dangerous felony counts of the indictment, thereby allowing him to avoid potential mandatory consecutive sentences. The court further noted that the Defendant's lengthy period without new criminal convictions was due to the Defendant's having been incarcerated in federal prison for at least twelve or thirteen years. The trial court observed that the Defendant's instant offenses consisted of "the same type of criminal behavior that he's been convicted of numerous times in the past" and found that the Defendant's criminal history, accompanied by the Defendant's testimony that he did not have a drug problem, indicated that the Defendant was a drug dealer.

The trial court observed that the Defendant's presentence report reflected that the Defendant had either failed to comply with the conditions of probation or committed new offenses while on probation on at least seven different occasions. The trial court reviewed in detail the Defendant's past unsuccessful attempts at probation, noting that they included the Defendant's having at least twice been declared an absconder from probation. Based on the Defendant's history, the trial court found that the interests of society in being protected from the Defendant's future criminal conduct was great, that measures less restrictive than confinement had frequently or recently been unsuccessfully applied to the

Defendant, and that any type of probation would unduly depreciate the seriousness of the offenses. The trial court, therefore, found that the Defendant was not a suitable candidate for probation or alternative sentencing and ordered that he serve his effective ten-year sentence in the Tennessee Department of Correction. This appeal followed.

## ANALYSIS

The Defendant contends that the trial court erred in denying probation, arguing that incarceration is not in the best interest of either himself or the public. In support, he points to his testimony that he held a good job, kept the gun only for self-protection after undergoing the traumatic experience of being carjacked, and was taking the marijuana as a gift to his daughter. He asserts that "he was clearly not intending to use a weapon for any reason other than self[-]defense" and argues that it "is . . . a miscarriage of justice to sentence [him] to prison for 10 years for being in possession of a drug that is rapidly becoming legal across the country." The State responds that the trial court properly exercised its discretion in imposing the sentence of incarceration. We agree with the State.

This court reviews the length, range, and manner of service imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) (applying the standard to alternative sentencing).

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). The following sentencing considerations in Tennessee Code Annotated section 40-35-103(1) should be used to determine whether alternative sentencing is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Additionally, a court should consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. *See id.* at § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure

of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. *Id.* at § 40-35-102(5).

The burden is on the defendant to demonstrate suitability for full probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). In evaluating the suitability of probation, the trial court should consider: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *Id.*

We agree with the State that the trial court acted well within its discretion in ordering a sentence of full confinement. The record reflects that the trial court considered the sentencing guidelines, the facts and circumstances surrounding the offenses, and the background information in the presentence report, including the Defendant's past failures at probation and his serious criminal record, much of which involved the same type of criminal behavior as in the instant case. The trial court also appropriately considered the fact that the Defendant was already receiving the plea-bargained benefit of a ten-year sentence as a Range II offender and the dismissal of the possession of a firearm during the commission of a dangerous felony counts of the indictment. *See*, *e.g.*, *State v. Stephenson*, No. E2023-00241-CCA-R3-CD, 2023 WL 8889713, at *4 (Tenn. Crim. App. Dec. 26, 2023), *perm. app. denied* (Tenn. May 16, 2024) (concluding that the trial court did not abuse its discretion in basing its denial of probation on defendant's bad record and fact that he received a lenient plea bargain); *State v. McIntosh*, No. E2022-00715-CCA-R3-CD, 2023 WL 3676889, at *6 (Tenn. Crim. App. Feb. 22, 2023), *perm. app. denied* (Tenn. Oct. 13, 2023) (recognizing that a defendant's receipt of a lenient plea bargain is an appropriate factor to consider in sentencing). Moreover, it is clear from the trial court's questioning of the Defendant that it did not find the Defendant credible in his claim that his possession of the gun was strictly for self-defense and that he intended the marijuana as a gift for his daughter. Accordingly, we affirm the sentence of incarceration imposed by the trial court.

## CONCLUSION

Based on our review, we affirm the judgments of the trial court.


s/ John W. Campbell
JOHN W. CAMPBELL, SR., JUDGE